[Cite as *State v. Morse*, 2025-Ohio-2713.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
WOOD COUNTY

State of Ohio                                    Court of Appeals No.  WD-24-072

    Appellee                               Trial Court No.  24 CR 246

v.

Owen Morse                               **DECISION AND JUDGMENT**

    Appellant                             Decided: August 1, 2025

* * * * *

Paul A. Dobson, Wood County Prosecuting Attorney, and
David T. Harold, Assistant Prosecuting Attorney, for appellee.

Samuel E. Gold, for appellant.

* * * * *

**MAYLE, J.**

{¶ 1} In this appeal, following a guilty plea, defendant-appellant, Owen Morse, appeals the September 27, 2024 judgment of the Wood County Court of Common Pleas sentencing him to an aggregate prison term of 30 months.  For the following reasons, we affirm.

## I. Background and Facts

{¶ 2} Morse was indicted on two counts of domestic violence in violation of R.C. 2919.25(A), both fourth-degree felonies; one count of felonious assault in violation of R.C. 2903.11(A)(1), a second-degree felony; and one count of tampering with evidence in violation of R.C. 2921.12(A)(1), a third-degree felony.

{¶ 3} Morse and the state reached an agreement under which Morse pleaded guilty to the domestic violence charges, and the state agreed to dismiss the felonious assault and tampering charges at sentencing. After conducting a thorough Crim.R. 11 plea colloquy, the trial court accepted Morse's plea and found him guilty.

{¶ 4} At the sentencing hearing, the state asked the court to impose a "significant prison sentence" instead of community control because of "the profound negative impact [Morse] has had on so many people." It also noted that Morse was convicted in Michigan less than two years earlier of the equivalent of felonious assault with a firearm "in a relationship that he was in previously . . ." and had "already been given a chance." Additionally, the state saw a "significant abdication of any responsibility" in the presentence investigation report.

{¶ 5} Next, the victim, A.C., addressed the court. She explained that Morse is her ex-fiancé, and they have a baby daughter together. They separated about a month before the June 17, 2024 incident, and had been attempting to coparent, but A.C. felt that Morse "had done very little to co-parent [their] child." Because of that, she told Morse on June 15 that she had looked into seeking child support from him. The day of the incident,

2.

Morse brought the baby to A.C.'s apartment after she finished work. While he was there, he attempted to dissuade A.C. from seeking child support. When A.C. realized that the reasons he gave her "were lies in an attempt to manipulate [her] into not filing, . . ." and told him that she did not believe him, Morse got "very angry." A.C. was sitting on the couch breastfeeding their child when Morse "got in [her] face and began to yell." Soon after, Morse punched her in the face, knocking out a tooth. She "immediately began to hear a ringing noise and the sound of [the baby] crying." The follow-through of Morse's punch hit the baby. A.C. believed that Morse "wanted to hurt [her] so badly he didn't even think twice about the fact that [she] was holding [their] baby."

{¶ 6} A.C. went to the kitchen to get away from Morse after he hit her, and, although she thought that he was leaving, he turned around and came back toward her. When she showed Morse her tooth and told him that he had hit her so hard that it fell out, Morse asked to see the tooth, grabbed it from her, and told her that he was "taking it so you don't have evidence."

{¶ 7} A.C. ultimately needed to have three teeth repaired. Following the assault, she was "on edge, pretty much, all the time," "no longer trust[ed] even those closest to [her]," and had nightmares about Morse coming after her. The baby had a bruise on her temple for about a week after the incident but was otherwise unharmed.

{¶ 8} A.C. also told the court that Morse had threatened her life and her family members' lives on "multiple occasions" and said that he would kill or hurt her or her family if she called the police. He claimed to have "people" who would hurt them on his

3.

behalf if he were in jail. A.C. believed that, "when given the opportunity, Owen would commit similar crimes" because he had threatened her life and choked her before, was convicted of crimes in Michigan for holding a gun to his ex-girlfriend's head, and told A.C. that he "won that situation, [he] left her, his ex, with lifelong trauma[,]" which he said "as though it were a trophy he was proud of." Ultimately, she thought that Morse was "a scary and dangerous individual," and said, "I fear for my daughter and my family and I's [sic] safety upon his release, as well as any other female that may get involved with him in the future."

{¶ 9} Before Morse and his attorney spoke, Morse's father addressed the court. He said that he and Morse's mother were "saddened" by what Morse had put A.C. through but were "not ready to give up on [their] son yet." He believed that Morse had made "tremendous strides" with his mental health issues while he was in jail during this case by taking anger management classes and engaging in counseling. Morse's counselor had found him a place at a "facility that will teach him to manage his illness and get him on the correct medicines." Morse's father also said that Morse "knows he has to get better or he loses his daughter forever. He, so much, wants the chance to be in her life and be a dad, and to do that, he has to work on himself first."

{¶ 10} When defense counsel spoke, she asked the court to impose community control sanctions. She said that Morse was honorably discharged from the national guard; had a criminal record that consisted of three traffic violations and two felony convictions in Michigan; had been in compliance with the terms of his Michigan

4.

probation until the underlying incident happened; and had mental health issues that he needed to resolve. To improve his mental health, he began counseling before the June 17 incident, and had a place in an intensive, dual-diagnosis treatment program with admission scheduled for the next day. Additionally, Morse admitted to hitting A.C. and knew that his reaction to the situation was inappropriate.

{¶ 11} Regarding the facts of the incident, counsel challenged the state's claim in its sentencing memorandum that A.C. had "broke[n]" two molars; she noted that the medical records said that A.C. had "chipped" two teeth. Counsel also disputed the state's claim that Morse had hit the baby. On the responding officer's body camera video, A.C. said that she "thought" that Morse had hit the baby and "d[id]n't know if anything hit her." Additionally, the child's medical records indicated that the bruise on her temple happened when "child hit head with hard plastic toy."

{¶ 12} Finally, when Morse addressed the court, he said that he was "deeply sorry and remorseful" for and "so embarrassed and ashamed" of his actions. He regretted that he was missing out on important moments in his daughter's life and "can't wait for the day [he] can be an active father again." His time in jail had "completely allowed [him] to see the consequences of [his] actions, [and] allowed [him] to work on [him]self." He concluded by saying, "I know nothing I say can change the past, but I can only pray that I'm given the opportunity to get the mental help I need to control my emotions which caused my actions so this never happens again."

5.

{¶ 13} Before imposing sentence, the trial court noted that it had reviewed the presentence investigation report and letters from Morse, his family members, A.C., and her family members. The court found that a prison sentence was necessary because Morse was on probation for a "substantially similar offense" at the time of this offense, he "struck the mother of [his] child in the face while she was holding the child and caused injury[,]" he "didn't learn from the first time," and he "can't make the same mistake twice."

{¶ 14} The court sentenced Morse to 18 months in prison on one count of domestic violence, and 12 months on the other court. It ordered him to serve his sentences consecutively, for an aggregate prison term of 30 months. To justify consecutive sentences, the court said,

> I believe that the facts support that a consecutive sentence is necessary to protect the public and to punish the offender, I do not believe consecutive sentences are disproportionate to the seriousness of his conduct and the danger that he poses to the public. Additionally, I do believe that two or more offenses were committed as part of a course of conduct that was so harmful and great or unusual that no single term adequately reflects the seriousness of that conduct.

{¶ 15} Morse now appeals, and raises the following assignment of error:

> The Trial Court erred to the prejudice of the Appellant by imposing consecutive sentences for a total term of 30 months incarceration.


## II. Law and Analysis

{¶ 16} In his brief, Morse argues that, although the trial court made all of the findings required by R.C. 2929.14(C)(4), it erred by imposing consecutive sentences

because "the sentence imposed was disproportionate in light of relevant mitigating factors."[1]  The state responds that the trial court made all of the findings required by R.C. 2929.14(C)(4) and consecutive sentences are not clearly and convincingly unsupported by the record.

{¶ 17} We review felony sentencing challenges under R.C. 2953.08(G)(2).  *See State v. Kleinhans*, 2023-Ohio-2621, ¶ 24 (6th Dist.).  Under that statute, an appellate court "may increase, reduce, or otherwise modify a sentence that is appealed under this section or may vacate the sentence and remand the matter to the sentencing court for resentencing" only if it clearly and convincingly finds either of the following:

> (a) That the record does not support the sentencing court's findings under division (B) or (D) of section 2929.13, division (B)(2)(e) or (C)(4) of section 2929.14, or division (I) of section 2929.20 of the Revised Code, whichever, if any, is relevant;

> (b) That the sentence is otherwise contrary to law.

R.C. 2953.08(G)(2).

{¶ 18} Morse challenges the trial court's imposition of consecutive sentences under R.C. 2929.14(C)(4).  Under that section, when a trial court imposes multiple prison terms for convictions of multiple offenses, it may require the offender to serve the prison terms consecutively if it finds that "consecutive service is necessary to protect the public

---

[1] Morse also contends that the trial court erred by imposing a prison sentence (instead of community control sanctions) because of the presumptions in favor of community control for fourth-degree felonies in R.C. 2929.13(B)(1) and 2929.19(B)(4) and seems to argue that the trial court incorrectly weighed the factors in R.C. 2929.11 and 2929.12.  He did not assign these issues as error, however, so we cannot consider them.  *State v. Roberson*, 2017-Ohio-4339, ¶ 103 (6th Dist.); App.R. 12(A)(1)(b); App.R. 16.

from future crime or to punish the offender and that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public, . . ." and if it also finds any of the following:

> (a) The offender committed one or more of the multiple offenses while the offender was awaiting trial or sentencing, was under a sanction imposed pursuant to section 2929.16, 2929.17, or 2929.18 of the Revised Code, or was under post-release control for a prior offense.

> (b) At least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the multiple offenses so committed was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct.

> (c) The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender.

{¶ 19} Thus, the statute requires the trial court to make three statutory findings before imposing consecutive sentences. *State v. Beasley*, 2018-Ohio-493, ¶ 252; *State v. Bonnell*, 2014-Ohio-3177, ¶ 26. It must find that (1) consecutive sentences are necessary to protect the public or to punish the offender; (2) consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger that the offender poses to the public; and (3) R.C. 2929.14(C)(4)(a), (b), or (c) is applicable. *Beasley* at ¶ 252. "[T]he trial court must make the requisite findings *both* at the sentencing hearing and in the sentencing entry." (Emphasis in original.) *Id.* at ¶ 253, citing *Bonnell* at ¶ 37.

{¶ 20} The Ohio Supreme Court clarified our standard of review of consecutive-sentence findings in *State v. Jones*, 2024-Ohio-1083. There, the court held that

8.

"[c]onformity with R.C. 2929.14(C)(4) requires the trial court to . . . note that it engaged in the analysis and that it has considered the statutory criteria and specifie[d] which of the given bases warrants its decision." (Internal quotations omitted and second brackets in original.) *Id.* at ¶ 14. "[A] reviewing court must be able to ascertain from the record evidence to support the trial court's findings." (Internal quotation omitted.) *Id.* The imposition of consecutive sentences will be upheld "provided that the necessary findings can be found in the record and are incorporated in the sentencing entry." (Internal quotations omitted.) *Id.*

{¶ 21} The "clear and convincing evidence" required by R.C. 2953.08(G)(2) is "'that measure or degree of proof which is more than a mere "preponderance of the evidence," but not to the extent of such certainty as is required "beyond a reasonable doubt" in criminal cases, and which will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established.'" *State v. Gwynne*, 2023-Ohio-3851, ¶ 14 (lead opinion), quoting *Cross v. Ledford*, 161 Ohio St. 469 (1954), paragraph three of the syllabus. An appellate court "must have a firm belief or conviction that the record does not support the trial court's findings before it may increase, reduce, or otherwise modify consecutive sentences." *Id.* at ¶ 15.

{¶ 22} In this case, Morse concedes that the trial court made the necessary R.C. 2929.14(C)(4) findings. Regardless, he claims that the court's proportionality finding is unsupported "in light of relevant mitigating factors." Specifically, he complains that the court "did not appear to give significant weight to" any of the mitigation evidence that he

9.

presented and "the sentence is unreasonable in light of the mitigation disregarded by the trial court." Our review of this claim is limited because "[t]he statutory scheme circumscribes an appellate court's review of a trial court's proportionality finding." *State v. Glover*, 2024-Ohio-5195, ¶ 52. That is, both R.C. 2929.14(C)(4) and 2953.08(G)(2) are phrased in the negative, so the trial court must determine that "consecutive sentences 'are not disproportionate' to the defendant's conduct and the danger he poses[,]" and the appellate court "may modify or vacate only when it finds that the record 'clearly and convincingly' 'does *not* support' the trial court's finding that consecutive sentences are not disproportionate." (Emphasis in original.) *Id.*, quoting R.C. 2929.14(C)(4) and 2953.08(G)(2)(a).

{¶ 23} Here, the record shows that Morse (1) punched A.C., his ex-fiancée and the mother of his infant child, while she was holding the baby; (2) knocked out one of A.C.'s teeth and damaged one or two others to the point that they required dental treatment; (3) may have hit the baby and bruised her head when he punched A.C.; (4) had a criminal record that consisted of three traffic violations and two felony assault charges from Michigan that happened less than two years earlier; (5) was on probation for threatening an ex-girlfriend with a gun and violated the terms of his probation by committing this offense; (6) had mental health issues; (7) expressed remorse for his conduct and a desire to better manage his emotions and mental health; (8) had begun mental health treatment; and (9) had secured a place at a residential treatment facility for people with dual diagnoses. Based on these facts, we cannot conclude that the trial court's proportionality

10.

finding is clearly and convincingly unsupported by the record.  Therefore, the trial court properly imposed consecutive sentences.  Morse's assignment of error is not well-taken.

### III. Conclusion

{¶ 24} Based on the foregoing, the September 27, 2024 judgment of the Wood County Court of Common Pleas is affirmed.  Morse is ordered to pay the costs of this appeal under App.R. 24.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. See, also, 6th Dist.Loc.App.R. 4.


Christine E. Mayle, J.
_____
JUDGE


Myron C. Duhart, J.
_____
JUDGE


Charles E. Sulek, P.J.
CONCUR.
_____
JUDGE

This decision is subject to further editing by the Supreme Court of Ohio's Reporter of Decisions.  Parties interested in viewing the final reported version are advised to visit the Ohio Supreme Court's web site at: http://www.supremecourt.ohio.gov/ROD/docs/.